UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN LOPEZ,

      Plaintiff,

    v.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

      Defendant.

_____/

Case No. 2:26-cv-1126-KCD-NPM

## <u>ORDER</u>

Petitioner Juan Lopez has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] As best the Court can tell, he claims that his continued imprisonment violates the Fifth Amendment and he has been denied procedural due process. (*Id.* at 7-8.) Respondents oppose the petition. (Doc. 11.) For the reasons below, the petition is **DENIED**.

### I. Background

Lopez is a native of Cuba who entered the United States in 2002 and was released on parole. (Doc. 11-1 at 15.) He was ordered removed from the United States in 2011 and placed on an order of supervision when he could not be repatriated to Cuba. (*Id.* at 1-2, 10, 15, 17; Doc. 1 at 4.) His supervision

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

was recently revoked, and he was returned to immigration custody on November 16, 2025. (Doc. 11-1 at 17.)

Lopez received notice that his supervision order was being revoked in December 2025. (*Id.* at 10-11.) ICE also conducted an informal interview to allow Lopez to respond to the reasons for the revocation. (*Id.* at 12.) On the same day, he received a notice of removal informing him that ICE intended to remove him to Mexico. (*Id.* at 13.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

### A. Fifth Amendment

Lopez first claims that he is being held in violation of the Fifth Amendment. (Doc. 1 at 7-8.)  The statutory framework for removal works like

this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a [Due Process] claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Lopez cannot satisfy the initial temporal requirement. ICE took him into custody on November 16, 2026, so he remains within the window in which his detention is presumptively reasonable. Seemingly recognizing this, his petition jumps to the burden-shifting framework, arguing that his removal to Cuba is not likely. (Doc. 1 at 7.) First, ICE is attempting to remove him to Mexico, not Cuba. (Doc. 11-1 at 13.) And in any event, this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at \*8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at \*12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at \*4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

### B. Procedural Due Process

Lopez also presses a procedural due process claim. (Doc. 1 at 7.) He argues that he has been given no meaningful opportunity to demonstrate that he should not be detained. (*Id.*)

At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide

notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release and detaining him, like here, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). Lopez received both. (*See* Doc. 11-1 at 10-12.) He got exactly what the Fifth Amendment requires in this context—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Lopez's argument that his clean supervision record precludes ICE from revoking his supervision also fails. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Lopez's release specifically to enforce his outstanding removal order, gave him notice that they were doing so, and afforded him an informal interview.

Returning him to custody served a recognized, legitimate government objective and was done in compliance with the INA's regulations.

The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Lopez the requisite notice and an opportunity to be heard, his procedural due process claim fails.

### IV. Conclusion

Lopez's Fifth Amendment challenge to the length of his detention is premature, and the procedural due process claim fails, so the habeas petition must be **DENIED**. However, this denial is without prejudice to him refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on May 6, 2026.

Kyle C. Dudek
United States District Judge

6